IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

R. MICHAEL BOLEN,
UNITED STATES TRUSTEE                                    APPELLANT/PLAINTIFF

v.                                                       CASE NO.: 2:08CV170-SA

NICK O. ADAMS                                            APPELLEE/DEFENDANT

## MEMORANDUM OPINION

This matter comes before the court as an appeal taken by the United States Bankruptcy Trustee ("UST" or "Trustee"). The Trustee appeals the Order of the United States Bankruptcy Court for the Northern District of Mississippi, entered May 4, 2007, which denied the UST's Motion to Dismiss. This Court's jurisdiction is predicated on the authority to hear such appeals as provided by 28 U.S.C. § 158.[1] Having reviewed the briefs of counsel, the relevant legal authorities and exhibits, the record, and the Order of the Bankruptcy Court, this Court makes the following findings:

*Factual and Procedural Background*

Nick Adams filed his Petition pursuant to Chapter 7 on June 26, 2006, in the United States Bankruptcy Court for the Northern District of Mississippi. He subsequently filed his Statement of Current Monthly Income and Means Test Calculation, which included a deduction for his 401(k) loan obligation. On November 20, 2006, the Trustee filed a Motion to Dismiss Adams' Petition on

---

[1] 28 U.S.C. § 158(a) states in part that: [t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of the court, from other interlocutory orders and decrees; and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

the grounds that his 401(k) loan obligation was improperly deducted as an allowable expense; thus, he failed the Means Test, and a presumption of abuse arose as a matter of law under 11 U.S.C. § 707(b)(2).

On May 4, 2007, the Bankruptcy Court entered an Order denying the Trustee's Motion to Dismiss. The Order stated in pertinent part: "the Debtor may list his 401K loan obligation on Line 42 of the Chapter 7 Means Test as a secured claim."

From this Order, the UST perfected an appeal to this Court. The following issue is assigned for review: whether the Bankruptcy Judge erred in ruling that Adams' 401(k) loan obligation is a secured claim.

The Trustee argues that the obligation to repay a 401(k) loan is not a debt within the plain meaning of the Bankruptcy Code, or alternatively, a 401(k) obligation is not "secured" under the Bankruptcy Code.

*Standard of Review*

"In a bankruptcy appeal, the applicable standard of review by a district court is the same as when the Court of Appeals reviews a district court proceeding. Findings of fact by the bankruptcy courts are to be reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo." In re Chesnut, 422 F.3d 298, 301 (5th Cir. 2005); In re Evert, 342 F.3d 358, 363 (5th Cir. 2003) (citing Matter of Midland Indus. Service Corp., 35 F.3d 164, 165 (5th Cir. 1994)); In re Pequeno, 126 Fed. Appx. 158, 162 (5th Cir. 2005); In re Salter, 251 B.R. 689, 692 (S.D. Miss. 2000). The standard of review for a mixed question of law and fact is abuse of discretion. Eisen v. Thompson, 370 B.R. 762, 767 (S.D. Ohio 2007). Abuse of discretion is defined as a

definite and firm conviction that the [court below] committed a clear error of judgment. The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.

In re Eagle-Picher Indus., 285 F.3d 522, 529 (6th Cir. 2002).

*Discussion and Analysis*

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was signed into law on April 20, 2005. The 2005 Act amended, among other things, 11 U.S.C. Section 707(b) of the Bankruptcy Code. Prior to the 2005 amendments, Section 707(b) contained a presumption "in favor of granting the relief requested by the debtor," regardless of the debtor's assets, income, debts, or ability to pay some or all of his debts. In re Cortez, 457 F.3d 448, 455 (5th Cir. 2006). This presumption could only be overcome if, upon a motion of the bankruptcy court or United States Trustee, the court determined that "granting the relief requested would be a substantial abuse" of Chapter 7. Id. at 454. The 2005 Act eliminated both the presumption in favor of granting the requested relief, and the requirement that "substantial" abuse be shown to dismiss a Chapter 7 filing. In re Sorrell, 359 B.R. 167, 178-79 (S.D. Ohio 2007). A debtor requesting Chapter 7 relief now faces "a burden-filled application process, containing, depending upon the information provided, and subject to challenge from an expanded number of entities granted standing to bring such actions, a presumption against the relief available in a Chapter 7 case." Id.

After the BAPCPA, every debtor who owes primarily consumer debts in a Chapter 7 case is required to file, in conjunction with bankruptcy schedules and a statement of financial affairs, a Statement of Current Monthly Income and Means Test Calculation, Official Form 22A ("Means Test Form"). 11 U.S.C. §§ 521, 707(b)(2)(C). This is the official form approved by the Judicial

3

Conference of the United States to perform the § 707(b) means test. The ultimate result of the means test is a calculation of the debtor's monthly disposable income, which is used to screen Chapter 7 petitions for abuse. If the debtor's monthly disposable income is less than $100 ($6,000.00 over 60 months), the presumption of abuse does not arise. If the monthly disposable income is equal to or exceeds $166.67 ($10,000.00 over 60 months), the presumption of abuse arises. If the monthly disposable income is between $100 and $166.67, the presumption of abuse arises if that amount, over 60 months, is sufficient to pay at least twenty-five percent of the debtor's nonpriority unsecured debt. 11 U.S.C. § 707(b)(2)(A)(i).

If the presumption of abuse arises, a court, on its own motion or on the motion of a United States Trustee or other party in interest, may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily unsecured consumer debts. 11 U.S.C. § 707(b)(1). A filing under Chapter 7 in which the presumption of abuse arises can, with the debtor's consent, be converted to a filing under Chapters 11 or 13 of the Bankruptcy Code. Id.

At issue in this case is whether Adams' $381.80 monthly payment excised from his paycheck by his employer for the 401(k) loan obligation qualifies as a secured claim or a debt such that it may be deducted from his disposable monthly income. If this court holds that it is a secured claim, Adams' Current Monthly Income does not cross the threshold of abuse; if the court holds it is not a secured claim, Adams' Current Monthly Income may fall within the purview of abuse. Thus, the debtor's ability to deduct the monthly loan payment determines whether the presumption of abuse applies here.

The Bankruptcy Code defines "debt" as a "liability on a claim," and defines "claim" as a "right to payment." 11 U.S.C. § 101(12), (5). Thus, the terms "debt" and "claim" are considered to

4

be "coextensive" under the Code. McVay v. Otero, 371 B.R. 190, 195 (W.D. Tex. 2007); In re Mordis, 2007 Bankr. LEXIS 3527, 2007 WL 2962903 at *3 (Bankr. E.D. Mo. Oct. 9, 2007). A loan from a retirement plan constitutes a "debt" only if the retirement plan administrator has a "claim" for repayment. Id. "The vast majority of courts that have addressed the issue [both pre- and post-BAPCPA] have held that a debtor's obligation to repay a loan from a qualified retirement plan is not a 'debt' under the Code." In re Mordis, 2007 Bankr. LEXIS 3527, 2007 WL 2962903 at *3 (citing Mullen v. United States, 696 F.2d 470, 472 (6th Cir. 1983); In re Villarie, 648 F.2d 810, 811 (2nd Cir. 1981); Eisen, 370 B.R. at 769-70; McVay, 371 B.R. at 196-97; In re Jones, 335 B.R. 203, 210 (Bankr. N.D. Fla. 2005); In re Esquivel, 239 B.R. 146, 151 (Bankr. E.D. Mich. 1999); In re Scott, 142 B.R. 126, 131-32 (Bankr. E.D. Va. 1992)). See also McVay, 371 B.R. at 195 ("There is a clear consensus that an individual's pre-petition borrowing from his retirement account does not give rise to a secured or unsecured 'claim,' or a 'debt' under the Bankruptcy Code.") (citation omitted).

"When a person defaults on a loan taken from a qualified retirement plan, the plan administrator usually offsets the unpaid balance of the loan from the person's account." In re Mowris, 384 B.R. 235, 238 (Bankr. W.D. Mo. 2008). Consequently, the plan administrator does not have a "right to payment" from the account holder if he defaults on the loan. McVay, 371 B.R. at 198. In effect, the Debtors have borrowed their own money, such that, in the event they fail to repay the loans, then they have simply taken an advance on their retirement benefits. Id. Since such a loan is not a "debt" under the Code in the first place, payments on them cannot be "payments on account of secured debts," for the means test calculation under § 707(b)(2)(A)(iii). Id. at 210 ("Given the Court's determination that the [Debtors'] [retirement] loans were not 'debts' under the Code, the loans necessarily could not be 'secured debts,' and the repayment of such debts could not be

5

'payments on account of secured debts' for the purposes of § 707(b)(2)(A)(iii).").

After reading the briefs submitted and holding a hearing on the motion, the Bankruptcy Court specifically found that the "Debtor may list his 401K loan obligation on Line 42[2] of the chapter 7 Means Test as a secured claim." The Bankruptcy Court apparently interpreted Adams' loan against his retirement account not as one *from* his retirement account, but as one using that account as collateral. Moreover, the Bankruptcy Court found his 401(k) loan obligation to be a secured claim. Therefore, this Court finds the Bankruptcy Court's interpretation of this matter to be a mixed finding of law and fact and therefore reviewable under the abuse of discretion standard.

According to the Loan Note and Security Agreement, Nick Adams borrowed the sum of $17,000 from the Railworks Corporation Incentive Plan and granted to the Plan Administrator a security interest worth $17,000 in the vested amount of his retirement account balance. Specifically, the agreement notes that Adams is "giving [the plan administrator] a security interest in that portion of [his] vested account in the Plan ("the Collateral") equal to the loan amount, which amount does not exceed 50% of [his] vested account balance under the Plan." Under the Acceleration; Default section, the document states:

> Upon any default, the Secured Party shall have the **option**, to the extent allowable by law and **in addition to all other remedies available to such Secured Party by law**, to make entry in my loan account in the Plan, indicating such loan is being paid off and that the Collateral will be reduced by the amount of the unpaid principal balance and all interest owing thereon.

(Emphasis added). Also included in the loan documents is a Truth-in-Lending Disclosure Statement and notice that weekly deductions will be taken from Adams' paycheck to repay the debt.

---

[2]Line 42 governs "Future payment of secure claims."

It appears here, that the Bankruptcy Court interpreted Adams' Loan with his plan administrator as one in which the administrator could seek recourse from Adams personally instead of, or in addition to, offsetting any debt against his vested account due to the language highlighted above. Although the Court can only speculate due to the lack of written opinion, this may have been the Bankruptcy Court's reason for denying the UST's motion to dismiss even though the case law is overwhelmingly against allowing a 401(k) loan repayment deduction to be included as a secured claim under the means test.

The Second Circuit addressed this similar issue in In re Villarie, 648 F.2d 810 (2nd Cir. 1981). Under that decision, the appellate court held that if the plan administrator's source of repayment in the event of a default is to offset the unpaid balance from the debtor's future benefits, the administrator has no right to repayment from the debtor, and the loan does not constitute a "debt" under the Bankruptcy Code. Id. at 812. In particular, the loan documents did not give the plan administrator the right to sue a member for the amount of the advance and specifically stated that the amount of the disbursement could not exceed fifty percent of the employee's previous contributions to the fund. Id. at 811. The court considered the sources to which the administrator could turn for repayment of the unpaid loan and found that because there was no other right to recourse other than offset from the retirement account, the obligation lacked the core characteristic of a "debt" - - the creditor's enforceable "right to repayment." Id. at 812.

In McVay, the district court for the Western District of Texas reversed the Bankruptcy Court's denial of the UST's motion to dismiss for abuse. On their Statement of Current Monthly Income and Means Test Calculation, the Debtors listed at line 42 a deduction for the repayment of two loans they received from the administrator of their retirement plans. The Debtors attempted to

7

distinguish their retirement loan from the loan at issue in In re Villarie by noting that the plan administrator was not forbidden to sue by the loan contract or by the employee handbook. 371 B.R. at 198. However, the district court noted that "the sole remedy provided for in the loan agreement is the ability to deduct the loans' unpaid balance from future plan benefits that will otherwise be paid to the [Debtors]." Id. Thus, the court defined these parameters:

> A debtor whose borrowing is limited to his prior contributions is in essence borrowing his own money. But a debtor who borrows beyond that amount is effectively borrowing from other, plan participants, and the plan administrator in such a scenario will generally have a right to recover the unpaid balance. Only the latter scenario gives rise to a "debt."

Id. (citing In re Scott, 142 B.R. at 133).

In In re Smith, a bankruptcy court noted that although a retirement loan was set up as a secured loan complete with a Truth-in-Lending Statement and collateral pledge of fifty percent of the value of the vested retirement account, the "form of the documentation cannot get around the substance of the transaction, that [the Debtor] borrowed his own money. 388 B.R. 885, 887 (Bankr. C.D. Ill. 2008). That court analyzed the issue as follows:

> [A] retirement plan borrower has the right not to repay the loan. Nonpayment comes with liability for income taxes and penalties, but nonpayment is a valid, lawful alternative. As such, [the Debtor's] retirement plan trustee or administrator has no claim against [the Debtor] or the bankruptcy estate. Without a claim, a 401(k) plan loan is not a "debt" for bankruptcy purposes. With no debt, the loans are not "secured debts" and cannot be deducted under Section 707(b)(2)(A)(iii).

Id. at 887-88 (citation omitted).

After reviewing the case law and thoroughly studying the Bankruptcy Code and arguments made, this Court is of the opinion that Adams' retirement loan obligation is not a secured claim and

8

should not be deducted under Line 42 of Form 22A. Specifically, the Court finds persuasive the holding and reasoning of McVay v. Otero, 371 B.R. 190 (W.D. Tex. 2007), a case handed down six days prior to the Bankruptcy Court's Order. Thus, the Court finds that Adams' 401(k) loan obligation does not constitute a debt under Section 707(b) as he is effectively borrowing money from himself with the right not to repay the loan.

The UST alternatively argues that Adams' 401(k) loan obligation is not secured either. Section 506(a)(1) provides the definition for a secured claim: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in such property." This Court is not persuaded that Adams' 401(k) loan obligation is a secured claim.

Section 541(b)(7) of the Bankruptcy Code explicitly excludes as property of the bankruptcy estate "any amount . . . withheld by an employer from the wages of employees for payment as contributions to an employee benefit plan subject to . . . the Employee Retirement Income Security Act of 1974" or "received by an employer from employees for payment as contributions to an employee benefit plan" that is subject to ERISA. Thus, the retirement plan assets are specifically excluded under the Bankruptcy Code from a bankruptcy estate. See In re Moore, 907 F.2d 1476 (4th Cir. 1990).

Adams, however, argues that under Section 553, he is entitled to a setoff, thus qualifying his loan obligation as secured under 506(a)(1). See 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim . . ."). In order to exercise a right of setoff under

9

section 553, there are four conditions that must exist: (1) the creditor must hold a "claim" against the debtor that arose before the commencement of the case; (2) the creditor must owe a "debt" to the debtor that also arouse before the commencement of the case; (3) the claim and debt must be "mutual"; and (4) the claim and debt each must be valid and enforceable. In re Carolina Acoustical and Flooring, Inc., 2008 Bankr. LEXIS 1808, *6-7, 2008 WL 2369599, *2 (Bankr. M.D. N.C. June 10, 2008). As the Court has held above that the 401(k) loan obligation did not qualify as a "debt" under the Bankruptcy Code, Adams has no right to a setoff under Section 553. See 11 U.S.C. § 553.

## *Conclusion*

Adams' loan note allows the plan administrator to make entry into his 401(k) retirement account in the event of default. The Court concludes that regardless of the loan language providing for recourse "in addition to all other remedies available . . . by law," nonpayment is a valid option for the Debtor. Thus, the obligation lacks the core characteristic of a "debt" - - the creditor's enforceable "right to repayment" against the Debtor - - and cannot be included on Line 42 of the Statement of Current Monthly Income and Means Test Calculation. Accordingly, the Bankruptcy Court's Order denying the UST's Motion to Dismiss is REVERSED, and this case is hereby REMANDED to the Bankruptcy Court for further proceedings in line with this opinion and 11 U.S.C. § 707(b)(2).

SO ORDERED, this the __5th__ day of March, 2009.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**

10



ecf_Information@msnd.uscourts.gov
03/06/2009 09:12 AM

To ecf_notice@msnd.uscourts.gov
cc
bcc
Subject Activity in Case 2:08-cv-00170-SA Bolen v. Adams Memorandum Opinion

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

## U.S. District Court

## Northern District of Mississippi

### Notice of Electronic Filing

The following transaction was entered on 3/6/2009 at 9:12 AM CST and filed on 3/6/2009
**Case Name:**                           Bolen v. Adams
**Case Number:**                         2:08-cv-170
**Filer:**
**Document Number:**                     25

**Docket Text:**
**MEMORANDUM OPINION re [24] Order. Signed by District Judge Sharion Aycock on 3/5/09. (tab, USDC)**

**2:08-cv-170 Notice has been electronically mailed to:**

Christopher James Steiskal    christopher.j.steiskal@usdoj.gov

LeAnne Davis Abbott    leanne@gpmlawfirm.net

Paige McDowell    paige@gpmlawfirm.net

Sammye S. Tharp    sammye.s.tharp@usdoj.gov

**2:08-cv-170 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a